Sealed

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>RAYMOND BARRETT,<br><br>STATE OF FLORIDA, ex rel.<br>RAYMOND BARRETT,<br><br>                Plaintiffs,<br>v.<br><br>BISCAYNE MILIEU HEALTH CENTER, INC.,<br><br>JORGE MACLI,<br><br>SANDRA MACLI,<br><br>ANTONIO MACLI,<br><br>CARMEN MERCADO,<br><br>JACQUELINE MORAN,<br><br>DEREK ALEXANDER,<br><br>ANTHONY ROBERTS,<br><br>RUFUS CARGILLE,<br><br>JOHN H. JACKSON,<br><br>SABRINA PATRIDGE,<br><br>RILEY WILSON,<br><br>JAMES EDWARDS,<br><br>                Defendants. | CASE NO. 10-24187 CV JEM<br><br>COMPLAINT AND JURY DEMAND<br><br>**TO BE FILED UNDER SEAL**<br><br>**DO NOT SERVE**<br><br>FILED by RAL D.C.<br>NOV 23 2010<br>STEVEN M. LARIMORE<br>CLERK U.S. DIST. CT.<br>S. D. of FLA – MIAMI |

INTRODUCTION

This is an action by *qui tam* Relator Raymond Barrett (Relator), through the undersigned counsel, made on behalf of himself, the United States of America (United States), and the State of Florida to recover damages and penalties arising from Defendants Biscayne Milieu Health Center, Inc.; owners Jorge Macli, Sandra Macli and Antonio Macli; nurse Carmen Mercado; Medicare biller Jacqueline Moran; recruiters Derek Alexander, Anthony Roberts, Rufus Cargille, John H. Jackson, Sabrina Patrdige, Riley Wilson, and James Edwards (collectively "Defendants") using, making, presenting or causing to present false statements and claims to the government in violation of the False Claims Act, 31 U.S.C. § 3729 et. seq., and Florida False Claim Act, F.S.A. § 68.081 et seq. The Defendants wrongfully obtained and retained substantial funds from government healthcare programs, including Medicare, Medicaid, TRICARE/CHAMPUS, Blue Cross/Blue Shield – CHIPS, and Veterans Administration ("VA") [collectively government healthcare programs or Medicare for convenience] through false claims and false statements made in connection with medical services provided by Defendants since at least since 1996 through the present.

Under the terms of the False Claims Act, this Complaint is to be filed in camera and under seal and is to remain under seal for a period of at least sixty days and shall not be served on the Defendants until Court so orders. The Government may elect to intervene and proceed with the action within the next sixty day time frame, or within any extension of that initial sixty day period granted by the Court for good cause shown, after it receives both the Complaint and the Material Evidence submitted to it.

For his cause the Relator alleges as follows:

NATURE OF ACTION

2

1. This is an action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733, and Florida False Claim Act, F.S.A. § 68.081 et seq. For ease of make allegations both are collectively referred to as "False Claims Act."

2. Under the False Claims Act, a private person may bring an action in federal district court for himself and for the United Sates, and may share in any recovery. 31 U.S.C. § 3730 (b). That a private person is known as a "Relator" and the action that the Relator brings is called a *qui tam* action.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction to adjudicate this action under 28 U.S.C. §§ 1331 and 1335.

4. The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because they are domiciled in this state or transact and have transacted business in this District.

5. Venue is proper in this District under 31 U.S.C. §3732 and 28 U.S.C. § 1391 (b) and (c) because at least one of the Defendants resides and or transacts business in this District.

## PARTIES

### PLAINTIFFS

6. The Relator brings this action on behalf of the United States, including its agency, the Department of Health and Human Services ("HHS") and its component, the Centers for Medicare and Medicaid Services ("CMS," formerly the Health Care Financing Administration ("HCFA"), Medicare, Medicaid, TRICARE/CHAMPUS, Blue Cross/Blue Shield – CHIPS, and Veterans Administration ("VA"), and all other federal healthcare programs, hereafter referred to collectively as "Medicare" for ease of alleging misconduct.

3

7.     The Relator also brings this action on behalf of the State of Florida, including its agencies and components, and its Medicaid program. For ease of alleging misconduct, the State portion of Medicaid is included in the term Medicaid or reference to government healthcare programs, and the State of Florida is included in the definition or reference to the Government. For ease of making allegations, the Medicaid allegations are referred to as Medicare, as stated above. Whenever a citation is made to the federal False Claims Act, the counterpart to the State of Florida's False Claims Act is meant to be included.

8.     The Relator also brings this action on behalf of himself, as permitted under the federal and state False Claims Acts. Relator Raymond Barrett is a citizen of the United States and a resident of the state of Florida.

9.     Raymond Barrett has direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(e)(4)(B), of the information on which the allegations set forth in this Complaint are based. Raymond Barrett has knowledge of the false claims and records that Defendants knowingly, falsely and fraudulently submitted to the federal government as alleged herein.

DEFENDANTS

10. Defendant Biscayne Milieu Health Center, Inc., is a corporation organized and existing under the laws of the state of Florida. It is located at 1000 Park Centre Blvd., Suite 138, Miami, FL 33056.

11. Defendants Jorge Macli, Sandra Macli and Antonio Macli are the owners of Defendant Biscayne Milieu Health Center, Inc., and each work and live in this district.

12. Defendant Carmen Mercado is a nurse employee of Defendant Biscayne Milieu Health Center, and works and lives in this district.

13. Defendant Jacqueline Moran is the Medicare Biller for Defendant Biscayne Milieu Health Center, and works and lives in this district.

14. Defendants Derek Alaxander, Anthony Roberts, Rufus Cargille, John H. Jackson, Sabrina Patrdige, Riley Wilson, and James Edwards each acted as recruiters for Defendant Biscayne Milieu Health Center, and each work and live in this district.

15. At all times material to this Complaint, the Defendants have participated in the above-mentioned Government healthcare programs and have received substantial revenues from these government healthcare programs.

THE MEDICARE PROGRAM

16. In 1965, Congress enacted Title XVIII of the Social Security Act to pay the costs of certain health care services for eligible individuals. 42 U.S.C. §§ 1395 et seq.

17. Medicare consists of two parts. Part A provides coverage for hospital costs, services rendered by skilled nursing facilities, home health care, and hospice care. Part B, provides coverage for physician services, outpatient hospital care, and at issue in this case psychiatric partial hospitalization programs (PHP). PHP services are provided by hospitals or community mental health centers (CMHC) other miscellaneous medical services such as physical and occupational therapy. See 42 U.S.C. §§ 1395c-1395i-4 & §§ 1395j-1395w-4. An entity that enrolls in the Medicare Part B program and provides PHP services is known as a provider. At all times relevant, Defendant, CMHC was a PHP provider participating in the Medicare program.

18. The U.S. Department of Health and Human Services ("HHS") is an agency of the United States whose activities, operations, and contracts are paid from federal funds. The Centers for Medicare and Medicaid Services ("CMS") is a division of HHS that is responsible for the administration and supervision of the Medicare program. For the purpose of administering Part

A and Part B Medicare reimbursement claims, HHS contracts with private local insurance companies, known as "carriers" and "fiscal intermediaries," to receive, review, and pay appropriate reimbursement claims related to services provided to Medicare beneficiaries. See 42 U.S.C. § 1395u.

19. Medicare providers such as Defendants have a legal duty to familiarize themselves with Medicare's reimbursement rules, including those delineated in the Medicare Manuals. Heckler v. Cmty. Health Serv. of Crawford County, Inc., 467 U.S. 51, 64-65 (1984).

20. To submit claims electronically, Medicare providers execute an Electronic Data Interchange Enrollment Form which contains several provisions including one that states: "anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this Agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law." Thus, under Medicare, it is illegal to provide and bill for medically unnecessary services and equipment.

21. Seeking payment for medically unnecessary services is an act designed to obtain reimbursement for a service that is not warranted by the patient's current and documented medical condition. See 42 U.S.C. § 1395y(a)(1)(A).

22. Seeking payment for higher coded procedures when less expensive procedures or tests were actually performed is an act to obtain reimbursement for a service that is not warranted by the patients' current and documented medical condition. See 42 U.S.C. § 1395y(a)(1)(A).

23. Providers, such as Defendant Biscayne Milieu Health Center, Inc., seeking reimbursement from Medicare had to meet certain obligations. Among other things, these obligations were to:

    a. bill Medicare only for reasonable and necessary medical services;

  b. not make false statements or misrepresentations of material facts concerning requests for payment under Medicare;

  c. assure that such services were not submitted substantially in excess of the needs of the patient; and

  d. not submit or cause to be submitted bills or requests for payment substantially in excess of the provider's cost.

## FALSE CLAIMS UNDER OTHER GOVERNMENT HEALTHCARE PROGRAMS

24. Defendants also submitted false statements and claims under Medicaid and several other state and federal Government healthcare programs. The allegations below and throughout this Complaint collectively state or refer to "Medicare" for ease of making allegations, even though they include State of Florida Medicaid allegations and other Government healthcare programs.

## PHP BILLING AND PAYMENT UNDER MEDICARE (AND MEDICAID)

25. PHP was intended to be an intensive outpatient program of psychiatric services provided to patients in lieu of psychiatric inpatient hospitalization. It was designed to provide patients who had profound and disabling mental health conditions with an individualized, coordinated, comprehensive, and multidisciplinary treatment program.

26. Medicare coverage and PHP eligibility required that services be reasonable and necessary for the diagnosis and active treatment of the individual's condition. In addition, the patient must be under the care of a physician who certified the need for services; the patient or legal guardian must provide written informed consent for PHP treatment; the patient must have the mental and physical capacity to actively participate in all phases of the program; there must be a reasonable expectation of improvement of the patient's disorder and level of functioning as a result of

treatment in the PHP, and the treatment being pursuant to an individualized treatment plan developed by the physician and multidisciplinary team, with the patient's involvement.

27. In order to qualify for reimbursement, Medicare required that certain documentation be maintained in the patient's medical records, which Medicare could review to determine eligibility for coverage, including, but not limited to: physician certifications and re-certifications of need for PHP treatment; medical history and physical examination establishing the medical necessity for PHP services; treatment plans; and progress notes for each billed service.

28. During the time period covered by this Complaint, Medicare reimbursed CMHCs that provided PHP services under a prospective payment system, that is, Medicare reimbursed CMHCs a set amount for each day qualifying services were rendered.

29. CMHCs such as the defendant, providing PHP services are required to prepare and submit two types of documents in order to receive reimbursement from Medicare: 1. the CMS-1450 claim form, and 2. an annual cost report known as CMS-2088-92 (Outpatient Rehabilitation Provider Cost Report) detailing the expenses incurred by the CMHC in operating the PHP.

30. Defendants were at all times relevant to this Complaint, required to submit an annual cost report to FSCO.

31. Every cost report contains a "Certification" that must be signed by the chief administrator of the provider or a responsible designee of the administrator.

32. At all times relevant to this Complaint, the cost report certification page included the following notice:

> I. Misrepresentation or falsification of any information contained in this cost report may be punishable by criminal, civil and administrative action, fine and/or imprisonment under federal law, Furthermore, if services identified in this report were

provided or procured through the payment directly or indirectly of a kickback or were otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result.

At all times relevant to this complaint, the responsible provider official or administrative was required to certify, in pertinent part:

> II.   ...to the best of my knowledge and belief, it (the cost report) is true, correct and complete report prepared from the books and records of the provider in accordance with applicable instructions, except noted.
>
> III.   I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that services identified in this cost report were provided in compliance with such laws and regulations.

Thus, the provider was required to certify that the filed cost report is 1. Truthful, i.e., that the cost information contained in the report is true and accurate; 2. Correct, i.e., that the provider is entitled to reimbursement for the reported costs in accordance with applicable instructions; 3. Complete, i.e., that the cost report is based upon all information known to the provider, and 4. The services provided in the cost report were not tainted by kickbacks.

33.   As part of the Medicare fraud scheme, in order to get paid by Medicare, Defendants signed or caused to be signed costs reports and attested to the certifications quoted above, and then submit those cost reports to Medicare.

## FACTUAL ALLEGATIONS

34.   From at least 1996 through the present, and upon information and belief prior to 1996, Defendants have knowingly engaged in systematic false and fraudulent schemes to defraud patients and Government healthcare programs out of significant amounts of money.

9

35.     Relator, Raymond Barrett (Relator), was employed by Defendant Biscayne Milieu Health Center, Inc. for a period of one year. He was last employed in 2010.

36.     During the course of his employment, Relator discovered that Defendants were involved in an ongoing scheme of filing false claims for Medicare reimbursement.

37.     Defendants have been knowingly submitting false claims to Medicare through a variety of improper schemes, including but not limited to falsely and fraudulently (1) conspiring to submit and submitting false claims to Medicare that were tainted by illegal kickback payments, (2) conspiring to submit and submitting false claims and statements to Medicare for medically unnecessary PHP services provided by Defendants, (3) making false claims statements and claims in Medicare cost reports.

### THE ANTI-KICKBACK STATUTE

38.     The Anti-Kickback Statute makes it illegal to knowingly and willfully offer or pay any remuneration directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce such person (i) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (ii) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. 42 U.S.C. §§ 1320a-7b(b)(2).

39.     The regulations issued pursuant to the Anti-Kickback Statute set forth a number of "safe harbors," compliance with which will protect a person from application of the statute. Although each safe harbor has its own specific requirements, most of the safe harbors require that the arrangement between the parties be set forth in a written agreement signed by the parties, and that the compensation reflect fair market value for the services provided.

40. Physicians are the primary referral source for laboratories, and thus have the ability to direct substantial business to laboratories. Laboratories therefore have an incentive to provide remuneration to physicians in order to induce them to refer business to the laboratory, or to reward them for past referrals.

41. The payments described below violate the Anti-Kickback Statute, in that they are made for the purpose of inducing or rewarding referrals of items and services to be paid for by federal and state healthcare programs.

42. Defendants also violated Section 1877 of the Social Security Act, 42 U.S.C. §1395nn, commonly referred to as the "Stark II" statute, and its associated regulations, 42 C.F.R. § 411.350 et seq. (collectively, the "Stark Law").

43. Claims violating the Anti-Kickback Statute or the Stark Law constitute false claims under the False Claims Act ("FCA"), at 31 U.S.C. § 3729 et seq.

44. The Florida Anti-Kickback Statutes are similar to the Federal Anti-Kickback Statute. See Fla. Stat. § 456.054, 817.505." Whenever the term kickback is used, it also includes the State of Florida's statutes.

## KICKBACK SCHEMES

45. Defendants engaged in a kickback scheme to gain referrals of Medicare (and other Government programs) beneficiaries so Defendants could then bill Medicare for services they allegedly provided to those beneficiaries.

46. Beginning in at least 1996, Defendants paid kickbacks to so called patient recruiters in exchange for collecting Medicare benefits and referring them to Defendants. These recruiters were paid a fixed amount between thirty to fifty dollars per patient. Recruiters also paid kickbacks to the beneficiaries.

11

47. The recruiters would round up and supply drug addicted individuals to Defendants.

48. Medicare pays approximately two hundred and eighty dollars per day for these individuals to receive drug treatment.

49. Defendants paid recruiters between thirty and fifty dollars per day for bringing the patients to them.

50. The recruiters used money, coercion, intimidation and misrepresentations to force the patients to attend the sessions.

51. Medicare requires patients to meet a three hour contact per session in order to receive benefits. However, Defendants did not follow this requirement and altered documents to make it appear as if this requirement was met.

52. The patients would arrive late and leave early and Defendants would fraudulently alter records to show patients were on time and were in attendance the entire day in order to receive full reimbursement from Medicare.

53. Therapists are required to write individualized group session notes detailing the patients' response to therapy in order to obtain reimbursement from Medicare. However, Defendants fraudulently copied the same set of notes from sessions months earlier, over and over not bothering to change personal pronouns, so that a record with a female name will have his and him in the body.

54. Defendants gave no individualized care to patients as is required by Medicare for reimbursement.

55. Defendants created a document to administer the paying of the kickbacks to the recruiters or case managers.

56. Relator has provided the government with several recorded conversations of several case managers admitting that the owners of the clinic pay them kickbacks to bring patients to the clinic.

57. Relator has also provided the government with recorded conversations of clinic staff discussing changing the attendance records so as to show someone who did not attend the whole day marked as in attendance for the whole day.

58. The Relator was instructed by Defendants to alter documents in the computer to show attendance for patients who were not there or who did not attend the whole day.

59. Relator had conversations with staff members who lamented that fact that they were asked to engage in these fraud acts and they worried they might be taken to jail along with the owners. Relator has provided the government with such conversations recorded on tape.

60. Relator also has firsthand knowledge of Defendants, including case manager Wilson Arteaga telling patients that they would supply the patient with cigarettes and a place to stay for attending the program.

61. Examples of the fraud also include that a recorded case worker Rufus Cargile saying how the clinic owner paid his expenses on a trip to Detroit so that he could find patients and bus them back to Miami so that the clinic owners could bill Medicare for them.

62. Monthly reports also contain evidence of the fraud.

## OTHER FALSE CLAIMS AND THE PHP PROGRAM

63. In addition to the tens of millions of dollars in claims defendants submitted to Medicare (and other Government programs) that were rendered false by the payment of kickbacks, most if not all of Defendants' claims to Medicare were false because (1) the services were provided to

beneficiaries who were not eligible, (2) the services were not medically necessary, or (3) the services were never actually rendered.

64. From the inception, Defendants routinely admitted beneficiaries to the PHP program who suffered from illnesses such as Alzheimer or severe dementia and therefore not eligible for the PHP program because their mental capacity did not allow them to benefit from the group therapy.

65. Defendants admitted numerous patients to the PHP program who were not eligible.

66. Patients are not eligible for PHP treatment if they have been admitted more than three times and fail to complete the course. Further if a patient has completed the course that patient is not eligible to continue receiving PHP treatment.

67. Defendants regularly admitted patients who had attended PHP treatment over six and seven times and admitted some patients as much as fifteen to twenty times fraudulently collecting benefits for patients who were ineligible for PHP benefits.

68. Examples include patient initials R.A., who was on his twentieth admission to the PHP program; F.S., who was severely mentally retarded and therefore ineligible for benefits; and M.E., who was admitted three times even though he was suffering from acute diminished mental capacity and not able to feed himself.

69. Defendants routinely billed for many services never actually rendered.

70. Defendants bookkeeping employees were instructed to falsify medical records, by among other things: documenting fake symptoms and illnesses, creating bogus psychiatric evaluations, documenting fake treatments that were never given.

71. Defendants used these altered medical records as justification when Medicare questioned claims that Defendants submitted.

72. Employees who failed to participate in the fraud were terminated.

## FALSE STATEMENTS IN ANNUAL COST REPORTS

73. In addition to submitting to Medicare (and other Government programs) tens of thousands of false claims for ineligible beneficiaries, medically unnecessary services, and services that were never rendered, Defendants also submitted to Medicare (and other Government programs) annual cost reports containing false statements and certifications.

74. Each year from 1996 through the present, Defendants submitted an annual cost report to Medicare. These cost reports documented Defendants purported expenses for providing treatments to ineligible beneficiaries, providing medically unnecessary services, and for services that were never rendered.

75. Defendants also documented on these cost reports as purported legitimate business expenses costs incurred solely because of paying unlawful kickbacks to patient recruiters and beneficiaries.

## COUNT I
## VIOLATION OF THE FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(1) & (a)(1)(A)

76. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77. As set forth above, Defendants knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)(1) (1990) and 31 U.S.C. § 3729(a)(1)(A) (2009 amendments).

78. By virtue of the false or fraudulent claims made by the Defendants, the United States suffered actual damages and therefore is entitled to multiple damages under the False Claims

15

Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT II
## VIOLATION OF THE FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(2) & (a)(1)(B)

79. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

80. As set forth above, Defendants knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. § 3729(a)(2) (1990) and 31 U.S.C. § 3729(a)(1)(B) (2009 amendments).

81. By virtue of the false records or statements made by the Defendants, the United States suffered actual damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT III
## VIOLATION OF THE FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(3) & (a)(1)(C)

82. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

83. As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act in violation of 31 U.S.C. § 3729(a)(3) (1990) and 31 U.S.C. § 3729(a)(1)(C) (2009 amendments).

84. By virtue of the false records or statements made by the Defendants, the United States suffered actual damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT IV
## VIOLATION OF THE FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(7) & (a)(1)(G)

85. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

86. As set forth above, Defendants knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(7) (1990) and 31 U.S.C. § 3729(a)(1)(G) (2009 amendments).

87. By virtue of the false records or statements made by the Defendants, the United States suffered actual damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT V
### VIOLATION OF THE FLORIDA CLAIMS ACT
### F.S.A. § 68.082(2)(a)

88. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

89. Defendants violated the Florida False Claims Act, F.S.A. § 68.081 et seq., in that they: (1) knowingly presented or caused to be presented numerous false claims for payment or approval to an agency in violation of F.S.A. § 68.082(2)(a).

90. By virtue of the false records or statements made by the Defendants, the State of Florida suffered actual damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT VI
### VIOLATION OF THE FLORIDA CLAIMS ACT
### F.S.A. § 68.082(2)(b)

91. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

92. Defendants violated the Florida False Claims Act, F.S.A. § 68.081 et seq., in that they knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by an agency in violation of F.S.A. § 68.082(2)(b).

93. By virtue of the false records or statements made by the Defendants, the State of Florida suffered actual damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT VII
## VIOLATION OF THE FLORIDA CLAIMS ACT
## F.S.A. § 68.082(2)(c)

94. Relator incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

95. Defendants violated the Florida False Claims Act, F.S.A. § 68.081 et seq., in that they conspired to submit false or fraudulent claims to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid, in violation of F.S.A. § 68.082(2)(c).

96. By virtue of the false records or statements made by the Defendants, the State of Florida suffered actual damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

PRAYER FOR RELIEF

WHEREFORE, the United States and Relator demand that judgment be entered against the Defendant and in favor of the Relator and the United States as follows:

97. On the First, Second, Third and Fourth Causes of Action under the False Claims Act, as amended, for the amount of the United States' damages, multiplied by three as required by law, and such civil penalties as are permitted or required by law;

98. On the Fifth, Sixth, and Seventh Causes of Action under the State of Florida's False Claims Act, for the amount of the State's damages, multiplied by three as required by law, and such civil penalties as are permitted or required by law;

99. That the Relator be awarded all costs and expenses of this action, including attorney fees, expenses and costs as permitted by 31 U.S.C. § 3730(d) and the Florida False Claims Act.

100. That the Relator be awarded the maximum share amount allowed pursuant to 31 U.S.C. § 3730(d) and the Florida's False Claims Act;

101. That the Relator be awarded all costs and expenses of this action, including attorney fees, expenses and costs as permitted by 31 U.S.C. § 3730(d) and the Florida's False Claims Act.

102. That the United States, State of Florida, and Relator receive all such other relief as may be just and proper.

Respectfully submitted,

_/s/ Jonathan Kroner_   11/22/10
Jonathan Kroner
Fla. Bar 328677
Attorney at Law
420 Lincoln Road, Suite 446
Miami Beach, Florida 33139
(305) 310-6046


Joel Hesch (pro hac pending)
Attorney at Law
3540 Ridgecroft Dr.
Lynchburg, VA 24503
Phone: (434) 592-4251

Attorneys for Relator

19